United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THERESA M. O'BRIEN,                    No. C 10-01830 EDL

          Plaintiff,                   **ORDER ON CROSS-MOTIONS FOR
                                       SUMMARY JUDGMENT**

     v.

JANET NAPOLITANO,

          Defendant.
_____/

     Before the Court are the parties' cross-motions for summary judgment. The Court held a

hearing on the motions on December 20, 2011, at which the parties were represented by counsel.

For the reasons stated at the hearing and set forth below, Plaintiff's motion for summary judgment is

DENIED and Defendant's motion for summary judgment is DENIED IN PART AND GRANTED

IN PART.

**I.     INTRODUCTION**

     Plaintiff Theresa M. O'Brien filed this disability discrimination action against her former

employer, U.S. Customs and Border Protection, which is a component within the Department of

Homeland Security. The parties filed cross-motions for summary judgment on Plaintiff's claims

under the Rehabilitation Act for failure to accommodate. Plaintiff concedes there is no evidence to

support her claim of retaliation and will not pursue that claim. The parties have stipulated that

Plaintiff will not seek emotional distress damages. Doc. no. 34.

United States District Court
For the Northern District of California

## II. FACTUAL BACKGROUND

### A. Employment Background

Plaintiff Theresa O'Brien is a former employee of Defendant Department of Homeland Security. Plaintiff was hired as an Agricultural Specialist Trainee for U.S. Customs and Border Protection ("CBP") in July 2008 and was terminated on April 5, 2010.

CBP is part of the Department of Homeland Security. Declaration of John Leonard ("Leonard Decl.,") ¶ 2. Its national headquarters is located in Washington, D.C. Id. CBP is charged with protecting the borders of United States from terrorism, human and drug smuggling, illegal migration, and agricultural pests, while simultaneously facilitating the flow of legitimate travel and trade. Id. Agriculture Specialist is a position within CBP whose purpose is to protect American agriculture and the food supply by preventing the introduction of harmful pests, plants, animal diseases and biological threats. Id. ¶ 7. Agriculture Specialists are trained to serve as an expert in the areas of inspection, intelligence, analysis, examination and law enforcement activities relating to the importation or exportation of agricultural and commercial commodities, and conveyances at international ports of entry located at airport, seaport and land borders throughout the United States and along the Canadian and Mexican borders. Id. Agriculture Specialists conduct visual and physical inspection of cargo, baggage, conveyances, packing materials and persons. Id. ¶ 8. During the inspection, Agriculture Specialists use established field techniques to recognize the presence and/or symptoms of quarantine plant pests and diseases, prohibited packing materials and/or other quarantine specific material. Id. They have the authority to seize prohibited or contaminated items which could cause great harm. Id. Inspections take place in a variety of settings, including commercial aircraft, private aircraft, ships, ocean containers, and warehouses. Id.

While looking at potential openings on the USA Jobs website during the summer of 2007, Plaintiff came upon an opening for an Agriculture Specialist at the San Francisco Port and applied for that position. Sorgen Decl., Ex. 2 ("O'Brien Depo.") at 52:11-14, 49:17-20. On December 13, 2007, as part of the application process for the Agriculture Specialist position, Plaintiff signed a document entitled, "Conditions of Employment The Agriculture Specialist Occupation." Walker

Decl., Ex. A ("Pl. Depo.")[1] at 51:3 and Ex 2 (also submitted in the record as Sorgen Decl. Ex. 12). The document contains a number of statements which represented, "some, but not all, of the essential functions of the Agriculture Specialist occupation," including the following:

> 4. Agriculture Specialist are required to work overtime as a condition of employment.
>
> ...
>
> 11. As an Agriculture Specialist, you may be required to engage in strenuous physical exertion, such as heavy lifting, crouching or crawling in restricted areas, climbing, and running.

Sorgen Decl. Ex. 12. At deposition, Plaintiff acknowledged that she had read, understood and signed the Conditions of Employment for the Agriculture Specialist Occupation. Pl. Depo., 51:3-20; 148:4-12. Plaintiff also acknowledged that the position description for a CBP Agriculture Specialist states among the "Special Requirements" that the position "[m]ay require rotation of assignments and duty locations." Pl. Depo. 164:21-165:13 and Ex. 22 at 5 and 51.

On July 28, 2008, Plaintiff was hired as an Agriculture Specialist Trainee at the San Francisco Field Office of the CBP. Leonard Decl. ¶ 4; O'Brien Depo. at 54:1-5. Plaintiff was appointed under the Federal Career Intern Program ("FCIP"), a two-year trial period that provides the agency with an opportunity to evaluate and monitor the employee's performance, development, conduct, dependability, and general suitability for continued employment. Leonard Decl. ¶ 4. Upon satisfactory completion of the internship, she could be noncompetitively converted to a career or career-conditional appointment. Id. ¶6. Conversion decisions are contingent upon successful completion of the internship, suitability, and performance requirements, certification from supervisory officials requesting trainee conversion, and the availability of an appropriate position and related funding. Id. Failure to complete the internship satisfactorily results in termination of employment. Id.

Plaintiff testified that during her background check, she disclosed that she had fibromyalgia, but did not remember telling the investigating CBP officer that she had restrictions. O'Brien Depo.

---

[1] To differentiate between the parties' separate designations of portions of Plaintiff's deposition transcript, Plaintiff's designations are referred to as "O'Brien Depo" and Defendant's designations as "Pl. Depo."

**United States District Court**
For the Northern District of California

at 146:9-20.  Plaintiff states that the investigating CBP officer did not inform her that her disability might be problematic for the position, and that as a result, Plaintiff felt confident that her condition would not be an impediment to her success in this position.  Declaration of Theresa M. O'Brien in support of Pl's Motion ("O'Brien Decl."), ¶ 2.

**B.    Plaintiff's Health**

Since March 2003, Plaintiff has been diagnosed with chronic myofascial pain syndrome. O'Brien Depo. at 76:12-18.  Sometimes categorized as fibromyalgia, chronic myofascial pain syndrome produces muscle tightness all over the body, and often pervades every aspect of the affected person's life.  Sorgen Decl., Ex. 1 (Transcript of Deposition of Dr. Elaine Date ("Date Depo.")) at 29:3-8; 30:10-12.  Plaintiff was re-diagnosed with the condition in February 2009 by her physician, Dr. Elaine Date.  Date Depo., 28:14-17.

**C.    Plaintiff's Training**

CBP Agriculture Specialists undergo extensive training consisting of both formal classroom and on-the-job training.  Declaration of Neftali Rivera ("Rivera Decl.") ¶ 3.  The training program is divided into three stages: Pre-Academy, Academy, and Post-Academy.  Id.  In July 2008, Plaintiff began Pre-Academy training for Agriculture Specialist position at the Port of San Francisco.  Id. ¶ 4. Plaintiff's supervisor during training, Neftali Rivera, states that during the Pre-Academy training period, Plaintiff "was extremely slow in assimilating concepts, did not seem to pay attention when important concepts were being explained, sometimes failed to follow directions, needed more time than usual to complete certain assigned tasks, and spent an excessive amount of time to finish computer based training compared to other trainees."  Id. ¶ 4.

Plaintiff then went to academy training at the USDA Professional Development Training Center in Frederick, Maryland where she completed 12 weeks of training.  Rivera Decl. ¶ 5.  She returned to the Port of San Francisco for Post-Academy Training.  Id.

Post-Academy Training consists of Passenger Processing and Trade Processing Modules. The Passenger Processing Module was ordinarily eight weeks in length; and involved briefings, orientations, computer-based training and actual on-the-job training under close supervision.  Rivera Decl. ¶ 6.  The final two weeks of that module are spent performing under the same conditions that

would be encountered in the passenger processing environment. Id. The Trade Processing Module, on the other hand, was scheduled to be ten weeks in length. Id. ¶ 7. The first week would be spent at the Air Mail Center, and the remaining nine weeks would be at the Air Cargo Facility. Id. During the Trade Processing Module, the trainee is under the supervision of a training officer, and in the last two to four weeks, is expected to work independently with a team leader under a controlled environment processing freight and baggage. Id.

Plaintiff's training supervisor states that Plaintiff was unable to complete the Passenger Processing Module within the eight week period because her performance fell short of expectations. Rivera Decl. ¶ 8. Plaintiff disputes Defendant's contention that she did not successfully complete the Passenger Processing Module training and states that she completed that training module within the allotted period. Plaintiff's Declaration in Opposition to Defendant's Motion ("O'Brien Decl. in Opp.") ¶ 4. Plaintiff denies that she was ever told of criticisms of her performance during this training. O'Brien Decl. in Opp. ¶ 2. Plaintiff's supervisor states that she was granted two time extensions for a number of reasons: first, Plaintiff continued to need an excessive amount of time to complete her computer based training; second, Plaintiff had difficulty assimilating information that was provided to her verbally; third, Plaintiff requested and was granted sick leave on several occasions. Rivera Decl. ¶ 8.

Plaintiff's supervisor states that Plaintiff was informed of the agency's concerns regarding her training performance during three scheduled feedback sessions on December 26, 2008, January 9, 2009, and January 23, 2009, and was advised of the worrisome prospect of problems that Plaintiff would face in completing the Trade Processing Module satisfactorily should she continue performing at the same level. Rivera Decl. ¶ 9. Plaintiff denies that she was ever told that she was a poor trainee and that her slow progress concerned her supervisors. O'Brien Decl. in Opp. ¶ 2. The training worksheet containing feedback from her formal feedback sessions indicate that Plaintiff "Needs Improvement" in the areas of inspection techniques, regulatory decision-making, civil penalties, pest ID & reporting, and incident reports. Rivera Decl., Ex. A at 12-14; also in the record as Sorgen Decl., Ex. 5. The worksheet also includes written comments by the supervisor and Plaintiff as the trainee, where she indicated on December 26, 2008 that "Above comments are

United States District Court
For the Northern District of California

1    reflective of my thoughts; I concur," and where she indicated on January 23, 2009 that "practice

2    with flowers & greenery manual is needed."  Id. at 15-16.

3         Plaintiff's supervisor states that during those feedback sessions, Plaintiff failed to disclose

4    that she suffered from any condition, apart from her lack of skill with computers.  Rivera Decl. ¶ 9.

5    Plaintiff points out that the training worksheet contains no reference to Plaintiff's alleged difficulty

6    with computer training.  Pl's Opp. to Def's Mot. at 4; Sorgen Decl., Ex. 5.  After her supervisor

7    discussed his concerns with Plaintiff, Plaintiff was released from the Passenger Processing Module,

8    and allowed to proceed to the Trade Processing Module at the end of January 2009.  Rivera Decl.

9    ¶ 9.  See O'Brien Decl. in Opp. ¶ 4.

10        **D.     Request for Accommodation**

11        In February 2009, Plaintiff  began the Trade Processing module.  Much of the work required

12   in this environment involved bending down and opening large trophy boxes, as well as lifting and

13   inspecting flower and herb boxes for insect life.  O'Brien Depo. at 67:19-68:5; 65:9-66:12.  Plaintiff

14   testified that after the first four weeks, her symptoms worsened as a result of these assignments,

15   which often required frequent lifting, bending, and opening of heavy and awkward freight.  O'Brien

16   Depo. at 64:19-65:6.

17        Plaintiff's supervisor, Rivera, states that once Plaintiff was assigned to the Trade Processing

18   Module in February of 2009, the training staff began to receive complaints from Air Cargo staff that

19   she could not do the work, that she was too slow, and that she did not make correct regulatory

20   decisions.  Rivera Decl. ¶ 10.  Plaintiff points out that Defendant offers no supporting

21   documentation to corroborate the receipt of such complaints during her Trade Processing Module

22   training.  Pl's Opp. to Def. Mot. at 5.  Although Plaintiff argues that she was never informed by her

23   supervisors that her work was unsatisfactory, her declaration does not directly address the time

24   period when she was in Trade Processing Module training.  See O'Brien Decl. in Opp. ¶¶ 2, 3

25   (stating that she was not informed of Rivera's criticisms of her work during Pre-Academy and

26   Passenger Processing Module training periods).  Rivera states that he planned to discuss these

27   training performance concerns with her during their scheduled training feedback session on

28   February 26, 2009.  Id. ¶ 11.  Rivera does not state that he discussed these concerns with Plaintiff

**United States District Court**
For the Northern District of California

1   during this feedback session; rather, Plaintiff told him that she was having trouble concentrating and

2   was in pain during the first few weeks of the Trade Processing Module due to a chronic medical

3   condition which she described as fibromyalgia/myofascial pain syndrome.  Id. ¶ 11; O'Brien Depo

4   at 75:11-76:11.  She explained that she took leave on January 26, 2009, February 18, 2009, February

5   23, 2009 and February 24, 2009, because of this condition.  Id.  Plaintiff's supervisor states that this

6   was the first time that Plaintiff had reported this condition to any of her supervisors.  Id.; Plaintiff

7   Depo., 75:10-76:11.

8         That same day, Plaintiff requested the following accommodations: (1) an exemption from

9   overtime, (2) a seven-day work week that would provide two days off in a row, (3) a schedule that

10  alternates between standing and sitting throughout the day, and (4) a reassignment to the

11  International Mail Facility.  Rivera Decl. ¶12; Plaintiff Depo. at 95:11-96:24 and Ex. 4.  Rivera and

12  Plaintiff drafted a statement detailing these requests and Rivera sent it to Judy Ortiz, Employee

13  Relations Specialist.  Sorgen Decl., Ex. 7.  In Rivera's email to Ortiz, he discussed the likelihood of

14  accommodating some but not all of Plaintiff's requests: "I think we may be able to come up with a

15  suitable arrangement that includes some of the options that she is requesting, but not all. . . . I told

16  the employee that a permanent exemption from overtime was the item I considered the hardest to

17  grant, because depending on her assigned shift, it may create an undue hardship on her coworkers."

18  Id.  Ortiz reviewed the statement and submitted it to Katherine McPartland, the CBP Equal

19  Employment Opportunity/Diversity and Civil Rights Officer in the San Francisco Field Office, for

20  further action.  Id.

21      **E.**    **Interactive Process**

22        The same day that Plaintiff made her request for accommodation, her training was

23  temporarily suspended pending a decision, and she was assigned to light duty at San Francisco

24  International Airport.  Rivera Decl. ¶ 13.  The accommodation request was forwarded to the

25  agency's Diversity and Civil Rights Officer, Katherine McPartland.  Declaration of Katherine

26  McPartland ("McPartland Decl.") ¶ 6.  McPartland acknowledged Plaintiff's request by email on

27  February 27, 2009, explaining the process and requesting a medical release and medical assessment

28  from Plaintiff's physician.  Id. ¶ 7 and Ex. A.  Plaintiff completed the formal CBP Request for

United States District Court
For the Northern District of California

1  Reasonable Accommodation Form on March 8, 2009.  Id. ¶ 8 and Ex. B; Sorgen Decl., Ex. 6

2  (3/08/09 Request for Reasonable Accommodation).

3          On March 11, 2009, Ms. McPartland conducted an interactive dialogue with Plaintiff about

4  her requested accommodation, medical condition, working conditions, her physical limitations and

5  possible accommodations.  McPartland Decl. ¶ 9 and Ex. C.  On April 22, 2009, McPartland

6  received the medical assessment from Plaintiff's physician, Dr. Elaine S. Date, then requested a

7  supplemental medical assessment on May 12, 2009 to clarify her earlier assessment.  Id. ¶¶ 10-14

8  and Exs. D, G, H.  Dr. Date indicated that she would need a new Functional Capacity Evaluation,

9  which Plaintiff was responsible for scheduling; McPartland received Dr. Date's supplemental

10 medical assessment on September 29, 2009.  Id. ¶¶ 14, 16-18, 20, 21 and Exs. J.   From March to

11 December 2009, McPartland consulted with agency managers regarding the essential functions of

12 Plaintiff's position and possible alternate work locations and modified duties, and sought advice

13 from the Job Accommodation Network ("JAN"), which is a service of the U.S. Department of

14 Labor's Office of Disability Employment Policy that provides employers with individualized

15 worksite accommodation solutions and technical assistance with disability-related legislation.

16 McPartland Decl. ¶¶ 5, 11-30.  Ms. McPartland documented six formal "Reasonable

17 Accommodation Dialogues" discussing Plaintiff's request for accommodation with Plaintiff and/or

18 with Plaintiff and her supervisors.  McPartland Decl. ¶¶ 8, 9, 12, 19, 22, 28, 29 and Exs. C, F, I, K,

19 N, O.  Plaintiff does not dispute that these dialogues took place and acknowledges that the proper

20 persons were involved in these dialogues.  Plaintiff Depo. at 104:15-105:13; 105:22-106:13;

21 113:15-114:12; 118:25-121:6; 121:13-122:10; 125:25-128:17; 128:24-129:17.

22         During the interactive process period, Defendant provided Plaintiff with the following

23 accommodations:  (1) assignment to the passenger baggage department only; (2) assignment to the 8

24 a.m. to 4 p.m. shift with two consecutive days off during the week; (3) no overtime; and (4) work

25 that alternated between standing and sitting.  Sorgen Decl., Ex. 8.  Her evaluations after February

26 2009 were satisfactory and demonstrated professional growth and improvement.  Sorgen Decl, Ex.

27 9. Shehata Shehata, one of Plaintiff's training supervisors, agreed that Plaintiff had a good work

28 ethic and attitude towards the job, and performed her work successfully within the parameters she

**United States District Court**
For the Northern District of California

1   was given.  Sorgen Decl., Ex. 10 (Transcript of Deposition of Shehata Shehata ("Shehata Depo.")) at

2   46:12-19.

3          **F.       Physical Limitations**

4          Plaintiff's physician, Dr. Elaine S. Date, provided her initial assessment of Plaintiff's

5   medical restrictions in April 2009.  Walker Decl., Ex. B (Deposition of Dr. Elaine S. Date ("Date

6   Depo. - Def.") at EDS 0088-91.  In response to Defendant's request for clarification, Dr. Date

7   requested that Plaintiff take a functional capacity examination.  Id. at 46:15-17.  After some delay,

8   Plaintiff took the functional capacity exam on September 13, 2009.

9          On September 23, 2009, based on her treatment of Plaintiff and the functional capacity

10  examination, Dr. Date provided McPartland with a letter describing Plaintiff's limits.  Walker Decl.,

11  Ex. B at EDS 0046.  The letter stated, in pertinent part, that Plaintiff could rarely lift and carry more

12  than ten pounds, and should not turn, bend or twist more than 2-3 times an hour.  Id.  Dr. Date's

13  letter stated that plaintiff's turning, twisting, and bending limitation is considered "very significantly

14  restricting and is closer to 80% range of the population."  Id.  Further, she recommended against any

15  occupation with frequent (34-66% of the workday) or constant (67%-100 of the workday) turning,

16  bending, or twisting.  Id.  Dr. Date limited Plaintiff's availability for overtime by indicating that

17  Plaintiff was restricted from working overtime to once a month for no more than 2 hours**.**  Date

18  Depo. - Def. at 77:11-14 ("when I saw two hours, I thought that she would be able to do with [sic]

19  without flaring up her pain too significantly.").  At deposition, Dr. Date made clear that Plaintiff

20  could not do 4 hours of overtime once a month.  Date Depo. - Def. at 77:6-16 ("I would think that

21  [four hours overtime a month] would be too much.").

22         At deposition, Plaintiff testified that handling the cargo during her Trade Processing training

23  was particularly difficult for her.  Pl's Depo. at 63:10-67:15.  In particular, Plaintiff testified that

24  during the inspection process she is required to open long trophy crates using a crowbar.  Id.  The

25  kneeling, twisting and bending required to open the cases and inspect the contents flared her

26  condition.  Id.  She also testified that performing inspections of the flower shipments in which she

27  would have to kneel, twist and bend to inspect flower containers also flared her condition.  Id. at

28  67-70.  Plaintiff testified that if she had to do this work on a continual basis, she would need an

United States District Court
For the Northern District of California

1 assistant to handle the cargo during Trade Processing or her condition could worsen.  Id. at

2 152:19-153:5.

### G.    Essential Functions

4         In order to determine the essential functions of the job, McPartland reviewed the position

5 description and spoke with Plaintiff and her supervisors.  McPartland Decl. ¶¶ 12, 15, 24.  Other

6 than the position description received from Chief Lisa Kerkorian, who supervised the Trade/Cargo

7 Operations, McPartland does not identify in her declaration other documents on which she relied to

8 determine the essential functions of the job.  Id. ¶ 15.  Based on the evidence that she gathered,

9 McPartland determined that Agriculture Specialists are required to work overtime; may be required

10 to engage in strenuous physical exertion, such as heavy lifting, crouching or crawling in restricted

11 areas, climbing, and running; and must participate in assignment rotations.  Id. ¶ 24.  McPartland

12 also determined that an Agriculture Specialist trainee must pass both components of the

13 Post-Academy training, the Passenger Processing and Trade Processing Modules, to become an

14 Agriculture Specialist.  Id.  Due to the fluid nature of transportation networks, Agriculture

15 Specialists can be called to perform work in Trade Processing at any time, even if they are currently

16 assigned to Passenger Processing.  Id.

17         At deposition, McPartland identified the document described as the position description that

18 applied to CBP Agricultural Specialists at the time Plaintiff worked there.  Sorgen Decl., Ex. 15

19 (McPartland Depo.) at 25:19-23.  Plaintiff submitted part of the position description document as

20 Exhibit 23 to the Sorgen Declaration, (part of document, Bates no. CBP 0214), but the full document

21 is in evidence as Exhibit B to the Vigna Declaration.  Plaintiff points out that the "position

22 description" does not mention overtime in the job description.  Pl's Opp. at 7.  Defendant points out

23 that the job description identifies "Major Duties" which include the following: "The incumbent

24 conducts visual and physical inspection of cargo, baggage, conveyances, packing materials and

25 persons using a wide array of non-intrusive technology."  Vigna Decl., Ex. B at 214.  Further, the

26 "Special Requirements" section of the job description states that the position, "May require rotation

27 of assignments and duty locations."  Id.

28         Defendant also relies on a different document titled "Conditions of Employment –The

United States District Court
For the Northern District of California

1    Agriculture Specialist Occupation" to identify the essential functions of the position, which Area

2    Port Director John Leonard identified at deposition as the source of essential functions.  Sorgen

3    Decl., Ex. 12 and Ex. 13 (Transcript of Deposition of John Leonard ("Leonard Depo.")) at

4    31:22-32:2 (testifying that the "Conditions of Employment" document was the only document of

5    which Leonard was aware "that contains essential functions of the agricultural specialist position").

6    Plaintiff signed the "Conditions of Employment" document on December 13, 2007.  Leonard Depo.

7    at 31:13-15; Sorgen Decl., Ex. 12.  Plaintiff contends that at deposition, neither EEO Officer

8    McPartland nor Director of Field Operations, Richard Vigna, could identify how the conditions

9    listed in the "Conditions of Employment" were derived or the method of formulating this document.

10   Although Vigna testified that although he did not know the derivation, he testified that the document

11   likely existed since the position was created in 2003.  Pl's Opp. at 7; Walker Reply Decl., Ex. B

12   (Vigna Depo.) at 32-33.

13          Plaintiff disputes Defendant's reliance on the Conditions of Employment –The Agriculture

14   Specialist Occupation, to delineate the requirements of the Agriculture Specialist position.  Plaintiff

15   contends that defense witnesses have previously conceded that the "position description" document

16   is the only document that sets forth the essential functions of a position, and that the position

17   description makes no mention of overtime.  Pl's Opp. at 7 (citing Rivera Depo. at 12:1-10 [admitting

18   he does not know of any other document]).  However, the record demonstrates that Rivera and

19   McPartland both testified that the Conditions of Employment also represent essential functions of

20   the position.  Walker Decl., Ex. C (Rivera Depo. at 54) and Ex. D (McPartland Depo. at 28).

21          Plaintiff concedes that the "Conditions of Employment" document states that working

22   overtime is a condition of employment, and that Agriculture Specialists "may be required to engage

23   in strenuous physical exertion, such as heavy lifting, crouching or crawling in restricted areas,

24   climbing and running."  Pl's Opp. at 7; Sorgen Decl., Ex. 12.  Plaintiff contends, however, that many

25   Agriculture Specialists are not required to perform these physical activities on a regular basis, for

26   example, only Specialists working at the seaport must crouch, climb, or crawl around shipping

27   containers.  Leonard Depo. at 48:3-5; Chun Depo. at 51:7-9.  Plaintiff also cites evidence that

28   Agriculture Specialists are not routinely "forced" to work overtime because many choose to accrue

1    overtime to earn additional income.  Opp. at 7 (citing Chun Depo. at 49:7-12; Rivera Depo. at 36:13-

2    15).

3             **H.     Denial of Request for Accommodation**

4             On November 12, 2009, Richard F. Vigna, the Director of Field Operations for the CBP's

5    San Francisco Field Office, sent Plaintiff a letter denying her reasonable accommodation requests:

6    "Since you have not established that you are able to perform the essential functions of your position,

7    with or without accommodation, you have not shown that you are 'a qualified individual with a

8    disability' within the context of the Rehabilitation Act."  Sorgen Decl., Ex. 11 (11/12/2009 denial

9    letter).

10            On November 22, 2009, Plaintiff submitted to Vigna a request for reconsideration of his

11   denial.  Sorgen Decl, Ex. 14.  Plaintiff revised her requested accommodations: (1) a seven-day

12   workweek, but without Saturday and Sunday necessarily being the consecutive days off; (2)

13   overtime once every two weeks; (3) assignment to the 8:00 a.m. to 4:00 p.m. shift; (4) a schedule

14   that would alternate between sitting and standing throughout the day; and (5) a return to Cargo to

15   complete her training with the help of an assistant.  Id.  Defendant denied her Request for

16   Reconsideration.  Plaintiff points out that during the nine-month interactive process, Defendant

17   granted several of Plaintiff's requests which were proposed in her reconsideration letter: (1) the

18   seven-day work week with two consecutive days off (which Plaintiff points out is now standard

19   agency practice (Rivera Depo. at 30:11-14)); (2) work that alternates between sitting and standing

20   throughout the day (Chun Depo., 50:3-8); and (3) assignment to the 8:00am- 4:00 pm shift (Chun

21   Depo., 77:15-21).  Plaintiff points out that the only requests that were denied were a limit on

22   overtime of any sort and limits on the physical limitations associated with heavy lifting during cargo

23   training.  McPartland Depo. at 114:17-19.  Plaintiff also cites defense witness testimony indicating

24   that CBP has made an accommodation to another employee of a one-year "stay-over" overtime

25   exemption and special schedule for an Agriculture Specialist who had a sleeping disorder.  Sorgen

26   Decl., Ex. 4 (Chun Depo.) at 30-31.  Plaintiff also testified as to her knowledge of an Agricultural

27   Technician, who requested accommodations due to knee surgery and was exempted from overtime

28   for at least a year.  O'Brien Depo. at 143:20-144:24.

12

On January 7, 2010, Vigna sent a letter to Plaintiff denying her request for reconsideration. Sorgen Decl., Ex. 20.  Plaintiff was put back on regular duty starting in January 2010.  Sorgen Decl., Ex 21.  While on regular duty, Plaintiff was never required to work overtime shifts that she didn't want or beyond her doctor's suggested limits.  Shehata Depo. at 48:4-8.

On April 5, 2010, Defendant terminated Plaintiff.  Sorgen Decl., Ex. 22.  In the termination letter, Leonard gave the following reason for her termination:

> While you have demonstrated that you are able to satisfactorily perform, and possess the knowledge to perform, certain job functions, you have not shown that you can perform essential functions such as physical inspection of cargo, baggage, conveyances, etc.  Your physician's limitations on lifting, bending, and twisting prevent you from engaging in certain types of physical exertion expected of employees in your position, which may include heavy or moderate lifting, stooping, kneeling, and stretching.  Further, your physician's restrictions preclude you from participation in assignment rotation, as well as overtime.

Id.

Plaintiff filed the instant action on April 28, 2010, alleging discrimination based on her disability and retaliation for filing an EEO complaint in December 2009.

### III.     OBJECTIONS TO LATE FILED PAPERS

Plaintiff objects to the supporting declarations that Defendant filed after the deadline for filing papers in support and in opposition to the motions.  Defendant acknowledges that some supporting documents were filed about 35 minutes after the midnight deadline, but contends that Plaintiff has not been prejudiced.  Def's Reply at 1 n.1.  Because the delay was minimal and Plaintiff has not demonstrated prejudice, the Court excuses the lateness of the filing.

### IV.     LEGAL STANDARD

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

**V.      ANALYSIS**

**A.      Reasonable Accommodation**

To establish a prima facie case of disability discrimination under the Rehabilitation Act, Plaintiff must demonstrate that 1) she is disabled; 2) she is a qualified individual able to perform the essential functions of the job; and 3) she has been discriminated against by her employer because of that disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999); Buckingham v. United States, 998 F. 2d 735, 739-40 (9th Cir. 1993). A "qualified individual" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 29 C.F.R. § 1630.2(m).

The parties do not dispute that Plaintiff has a disability within the meaning of the Rehabilitation Act, but dispute whether she is a "qualified individual." The issues to be decided are what the essential functions of the job are, and whether Plaintiff's requested accommodations were reasonable as a matter of law.

**1.      Essential Functions**

Plaintiff disputes Defendant's identification of the essential functions of the Agriculture Specialist to include overtime and strenuous physical activity. Plaintiff proposes that the essential functions should be limited to those set forth in the job description. Plaintiff also refers to evidence

14

United States District Court
For the Northern District of California

1  that Defendant has accommodated other Agriculture Specialists in the past to argue that Defendant

2  cannot demonstrate that it is necessary that all Agriculture Specialists must perform all the essential

3  functions identified by Defendant.  Pl's Mot. at 13.

4       The term "essential functions" refers to the "fundamental job duties of the employment

5  position the individual with a disability holds or desires." It does not "include the marginal functions

6  of the position."  Dark v. Curry County, 451 F.3d 1078, 1087 (9th Cir. 2006) (citing 29 C.F.R. §

7  1630.2(n)(1)).  The parties do not dispute that the factors to be considered in determining the

8  essential functions of a particular job include:

9            (i) The employer's judgment as to which functions are essential;

10           (ii) Written job descriptions prepared before advertising or interviewing applicants

11           for the job;

12           (iii) The amount of time spent on the job performing the function;

13           (iv) The consequences of not requiring the incumbent to perform the function;

14           (v) The terms of a collective bargaining agreement;

15           (vi) The work experience of past incumbents in the job; and/or

16           (vii) The current work experience of incumbents in similar jobs.

17  29 C.F.R. § 1630.2(n)(3). See Def's Mot. at 15; Pl's Mot. at 12.  Although Plaintiff disputes

18  whether the "Conditions of Employment" document should be considered in identifying the essential

19  functions, that written job description clearly states that overtime and "strenuous physical exertion,

20  such as heavy lifting, crouching or crawling in restricted areas, climbing, and running" were among

21  the "essential functions of the Agriculture Specialist occupation."  Sorgen Decl., Ex. 12.  Several

22  defense witnesses testified that the "Conditions of Employment" represent essential functions of the

23  position.  Further, Plaintiff admitted that she understood that the statements in the "Conditions of

24  Employment" document represented some of the essential functions of the job.  Pl's Depo. at 148:4-

25  12.  Plaintiff has not demonstrated that there is a genuine issue of material fact as to the essential

26  functions of the Agriculture Specialist position, and Defendant is correct that these functions are

27  essential to the job.

28       Plaintiff argues that Defendant has accommodated other Agriculture Specialists in the past so

15

**United States District Court**
For the Northern District of California

1   that the essential functions listed in a written job description are not, in fact, essential.  Pl's Opp. at

2   13 (citing Chun Depo. at 49; Rivera Depo. at 36).  This argument is really one about the

3   reasonableness of accommodations, rather than the essential functions of the job.  See Leonard

4   Depo. at 50 ("working overtime is a critical unavoidable requirement of the job.  Working overtime,

5   I would say, is [as] essential to this job as putting on the uniform.").  Although Plaintiff contends

6   that the testimony by her supervisors raise questions of fact as to whether overtime or physical tasks,

7   such as crouching or climbing, are essential functions of the Agriculture Specialist position, their

8   testimony instead shows that both airport cargo and seaport work require more strenuous physical

9   exertion than the Plaintiff could do without accommodation, as indeed her own experience in airport

10  cargo training showed.  See Chun Depo. at 51; Leonard Depo at 48.

11          With respect to the question whether Plaintiff was qualified to perform essential functions

12  without reasonable accommodation, the evidence of Dr. Date's medical limits on turning, twisting,

13  bending and limits on overtime to less than 4 hours per month, as well as Plaintiff's own testimony

14  of flare-ups while opening and inspecting trophy crates and while performing targeted inspections of

15  the flower shipments, demonstrates that Plaintiff was unable to perform the essential functions

16  without accommodation.  Although Plaintiff contends that she was qualified to perform the essential

17  functions, her contention is qualified by the need to have assistance or "limited accommodations,"

18  such that her argument addresses the question whether she is able to perform with reasonable

19  accommodations, not whether the essential functions are essential to the position.  See Pl's Reply at

20  4 ("Plaintiff has both demonstrated on the facts and verbally confirmed that she was entirely capable

21  of performing the functions of the Agriculture Specialist position **with limited accommodations**.")

22  (emphasis added).  Even in the light most favorable to Plaintiff, the evidence shows that Plaintiff

23  was not able to perform the essential functions without reasonable accommodation.

24          The question remains whether Plaintiff was a qualified individual who can perform the

25  essential functions with reasonable accommodation.

26                    **2.       Reasonable Accommodations**

27          Section 501 of the Act, 29 U.S.C. § 791, requires federal agencies to act affirmatively to

28  "structure their procedures and programs so as to ensure that handicapped individuals are afforded

16

equal opportunity in both job assignment and promotion." <u>Buckingham</u>, 998 F.2d at 739 (citation

and quotation marks omitted).  If accommodation to their handicap is required to enable plaintiffs to

perform essential job functions, then plaintiffs must only provide evidence sufficient to make "at

least a facial showing that reasonable accommodation is possible." <u>Buckingham</u>, 998 F.2d at 740

(citing <u>Arneson v. Heckler</u>, 879 F.2d 393, 396 (8th Cir.1989); 29 C.F.R. § 1613.702(f)(2)).

With respect to the employer's duty, the Ninth Circuit has held:

> An employer, to meet its burden under the Act, may not merely speculate that a
> suggested accommodation is not feasible. When accommodation is required to enable
> the employee to perform the essential functions of the job, the employer has a duty to
> "gather sufficient information from the applicant and qualified experts as needed to
> determine what accommodations are necessary to enable the applicant to perform the
> job."

<u>Buckingham</u>, 998 F.2d at 739 (citation and quotation marks omitted).  Here, Defendant bore "an

affirmative obligation to engage in an interactive process in order to identify, if possible, a

reasonable accommodation that would permit [Plaintiff] to retain [her] employment." <u>Dark</u>, 451

F.3d at 1088.

Here, Plaintiff disputes whether Defendant fulfilled its obligation to engage in the interactive

process in good faith to find a reasonable accommodation in light of the evidence of the nine-month

interactive process.  Although the dispute is centered on Defendant's refusal to provide her with

reasonable accommodations, Defendant faces liability if it failed to engage in the interactive process

in good faith and a reasonable accommodation would have been possible.  <u>Barnett v. U.S. Air, Inc.</u>,

228 F.3d 1105, 1116 (9th Cir. 2000), <u>overruled on other grounds</u>, 535 U.S. 391 (2002).   Plaintiff

contends that McPartland never explored whether Plaintiff's request to limit overtime to twice a

month would impose any hardship on the Agency.  McPartland Depo. at 34:1-9.  During the

interactive process, McPartland developed a "matrix," or chart, based on the position description,

conditions of employment document, and conversations with supervisors.  McPartland Depo. at

38:7-25.  The matrix lists a number of accommodation ideas to address Plaintiff's needs, including

compact lifting devices and smart carts to ease the pain associated with lifting heavy objects, as well

as ergonomic equipment to palliate and/or prevent pain resulting from bending and twisting at the

waist.  Plaintiff contends that McPartland only mentioned these ideas in passing.  Pl. Opp. Decl. ¶ 5.

United States District Court
For the Northern District of California

However, the evidence demonstrates that Defendant engaged in a very extensive interactive process over a long period, all the while accommodating Plaintiff and exploring many issues through many resources.  Thus, Plaintiff fails to raise a genuine dispute of fact on the issue whether Defendant conducted the interactive process in good faith.

The accommodations requested by Plaintiff and denied by Defendant are: (1) limitation on overtime; and (2) limitations associated with heavy lifting during cargo training by providing an assistant.  Pl's Mot. at 13-14.  Defendant contends that these requests for accommodations are unreasonable.  While a very close question, especially as to the second one, and Plaintiff may ultimately fail, given that these issues are very fact-intensive, Plaintiff has raised a genuine issue of material fact as to these two accommodations.

### a.      Overtime

Plaintiff has raised a genuine issue of material fact as to the reasonableness of her request to limit her overtime.  Even accepting Dr. Date's admission that Plaintiff could not perform 4 hours of overtime per month, Plaintiff cites an analysis by McPartland showing that Agriculture Specialists were not regularly required to perform overtime more than two hours per month.  Sorgen Decl., Ex. 17 (Agriculture Specialist Analysis of Essential Functions and Physical Activity) ("Probably no more than once a month; unless she works a certain shift that requires 'a stay over (2 hrs max)'").  Plaintiff has also shown that another Agriculture Specialist was granted a "stay-over" overtime exemption for one year to accommodate a sleeping disorder.  Pl's Mot. at 9 (citing Chun Depo. at 30-31).

Plaintiff indicates that she was willing to perform "stay over" overtime up to twice a month but asked for an exemption from "call-in" overtime.  Sorgen Decl., Ex. 14 (November 22, 2009 reconsideration request); O'Brien Depo. at 150:9-11.  The Agency notifies its employees in advance that they have been scheduled for call-in overtime.  Thus, a call-in overtime shift can be swapped with a shift of another co-worker, if that co-worker is willing to do so.  Some employees see overtime as a desirable benefit and some do not.  Rivera Depo. at 36:13-15.  According to Plaintiff's supervisor, every Agriculture Specialist has the option to try and swap out their assigned "call-in" overtime before having to take the extra shifts.  Shehata Depo. at 50:1-9.  Other than citing the

United States District Court
For the Northern District of California

1   Conditions of Employment identifying overtime as an essential function, Defendant offers no

2   evidence to show that Plaintiff's request for an exemption from call-in overtime would create an

3   undue burden on the agency or would otherwise be unreasonable.  It cannot be said, however, that

4   Plaintiff's request was reasonable as a matter of law because the written job descriptions require

5   overtime as a condition of employment.  The reasonableness of this overtime exemption therefore

6   presents a triable issue of fact.

7                              **b.      Assistance During Cargo Training**

8           Defendant contends that Plaintiff's request for assistance is unreasonable because the law

9   "does not require an employer to exempt an employee from performing essential functions or to

10  reallocate essential functions to other employees" to accommodate an employee with a disability.

11  Dark v. Curry County, 451 F.3d 1078, 1089 (9th Cir. 2006) (citing 29 C.F.R. Part 1630, App.) ("An

12  employer or other covered entity may restructure a job by reallocating or redistributing nonessential,

13  marginal job functions").  See Def's Mot at 16.  In Dark, the Ninth Circuit held that the employer

14  was not required to restructure the employee's position by exempting him from the essential duty of

15  operating heavy machinery.  451 F.3d at 1089.  Dark reversed summary judgment for the county

16  employer where it failed to engage in an interactive process to identify a reasonable accommodation

17  and there were triable issues of material fact as to whether any reasonable accommodation was

18  available, including use of accumulated leave or reassignment to a vacant position, either temporary

19  or permanent.  Id. at 1088-90.  The court held there that although there was triable issue in the

20  county's failure to consider reassignment to a vacant position, the employee was not entitled to a

21  change in essential duties.  Id. at 1089-90.  Here, Plaintiff could not meet the conditions of

22  employment and perform the essential functions of a CBP Agriculture Specialist without the

23  assistance of another employee.  See McPartland Decl., Ex. I (reasonable accommodation dialogue

24  where Plaintiff said that to complete her cargo training "she would need assistance with lifting heavy

25  objects and bring them to a table" and that "she would not need assistance all the time, but when

26  requested").

27          Defendant further asserts the undue hardship defense and contends that Plaintiff's request for

28  an assistant to complete cargo training would have created undue hardship for the agency.  The

ADA sets forth the factors to be considered in determining what constitutes an undue hardship:

(i) the nature and cost of the accommodation needed under this chapter;

(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10). The Ninth Circuit articulated the "undue hardship" standard as follows:

> The undue hardship standard is used to determine whether it is too onerous for a particular employer to make a specific accommodation sought by a specific employee, given the employer's size, economic circumstances, and other relevant conditions. This test, while strict, is less stringent than the "business necessity" standard, which requires employers to demonstrate that qualification standards that discriminate against a class of disabled employees are nevertheless permissible because it is necessary for the operation of the employer's business. To excuse a generally discriminatory provision, which is what the business necessity defense does, certainly requires more of a showing than is needed to excuse an employer from accommodating a specific employee under the undue hardship standard.

Cripe v. City of San Jose, 261 F.3d 877, 890 (9th Cir. 2001).[2]

Defendant contends that Plaintiff's physical limitations prevented her from participating in assignment rotation as well as the strenuous physical requirements of the job. Plaintiff requested an assistant as one possible reasonable accommodation to help her get through just the heavy lifting aspect of the Trade Processing Module training. See Sorgen Decl., Ex. 14 (Plaintiff's letter to

---

[2] Plaintiff also cites the Cal. Code of Regulations to define "undue hardship" as "an action requiring significant difficulty or expense" when considered in light of "the resources and circumstances of the particular employer in relationship to the cost or difficulty of providing a specific accommodation," but the CCR does not apply to Plaintiff's Rehabilitation Act claims here. See Pl's Mot. at 17-18 (citing CCR Title 2, § 7293.9(b)).

**United States District Court**
For the Northern District of California

1    Richard Vigna dated November 22, 2009).  Defendant contends that this request presented an undue

2    hardship to the agency.  Chief Lisa Krekorian, the Supervisory CBP Agriculture Specialist for the

3    CBP Port of San Francisco, assigned to Trade, was responsible for agriculture inspections for

4    Maritime and Air Cargo at San Francisco and Oakland during the relevant time period and was

5    Plaintiff's second line supervisor during the Trade Processing Module Training.  Declaration of Lisa

6    A. Krekorian, ¶¶ 2, 3.  According to Chief Krekorian, in the Air Cargo environment, an individual

7    CBP Agricultural Specialist conducts inspections independently throughout the day based on a

8    targeted inspections list.  Id., ¶ 5.  In order to accommodate Plaintiff's request that another employee

9    manipulate the freight, Krekorian contends that the other employee would have to be assigned to

10   accompany her for the entire day as she works her way through all of the items that must be

11   inspected throughout the day, because there is a distance issue, a timeliness concern, and vehicle

12   constraints with having an employee on call to assist as needed.  Id.  Inspections are scheduled about

13   every 30 minutes and are not in one central location, but in any customs bonded facility, so there

14   may not be vehicles available to bring the assisting employee to the inspecting location.  Id

15   According to Krekorian, providing Plaintiff with an assistant would take the employee from his/her

16   primary responsibilities.  At the time, the Air Cargo unit had 5 CBP Agriculture Specialists who

17   were training a minimum of 4 trainees, and often more.  Id. ¶ 6.  These 5 Agriculture Specialists

18   provided seven-day coverage as well as limited evening coverage.  Id.  The agency determined that

19   these individual were too busy and too valuable as experienced trainers to be used to manipulate

20   freight for Plaintiff all day for the 6 to 7 weeks left on Plaintiff's Trade Processing training.  Id.

21        The agency also considered assigning an Agriculture Technician to assist Plaintiff.  Id. ¶ 7.

22   Agriculture Technicians' training and responsibilities are not as involved as the Agriculture

23   Specialist, but at the time, and currently, there is only one Agriculture Technician assigned to Air

24   Cargo.  Id.  Her duties include data entry related to all of the inspections conducted in the Air Cargo

25   environment.  Id.  This work includes data entry for all the USDA required monthly reports, time

26   sheets, files, and she maintains supplies, vehicles and equipment.  Chief Krekorian contends that if

27   this data work is not done, it negatively impacts the commercial operations and free flow of goods

28   traveling through the port.  Id.  As there was only one Agriculture Technician assigned to Air Cargo,

United States District Court

For the Northern District of California

1  Chief Krekorian states that she could not assign the Agriculture Technician to assist Plaintiff all day

2  for 6 to 7 weeks without negatively impacting the agency's operations.  Id.

3        Krekorian also states that she queried other locations for potential assistance, but no other

4  Agricultural unit was able to send someone to assist for such a long period of time.  Id. ¶ 8.

5  Krekorian states that although there is only one Agriculture Technician for Air Cargo, there are a

6  total of 5 Agriculture Technicians in the building.  Id.  The shifts in the building are from

7  0600-2400, 7 days a week.  The technicians provide administrative support for all functions.  Id.

8  There are approximately 53 CBP Officers/Agriculture specialists and 9 Supervisors/Managers that

9  are supported by these 5 technicians.  Id.  CBP determined not to assign anyone to accompany

10 Plaintiff on her inspections all day, as this would take that person away from their assigned duties,

11 and this would last for 6 to 7 weeks.  Id.  CBP determined that this would have a negative domino

12 effect on the orderly flow of operations and would be inefficient to assign two employees to

13 accomplish one job, and the assistant's assigned job would also be adversely impacted.  Id.

14       Defendant has strong evidence that providing Plaintiff with an assistant to accompany

15 Plaintiff to manipulate freight for her would pose an undue hardship on the agency.  Plaintiff,

16 however, cites testimony by Chief Supervisory CBP Agriculture Specialist Dickens Chun, who

17 stated that he could have provided an assistant to Plaintiff during cargo training, but Chun also

18 testified that he would not have been able to provide a full time assistant during Plaintiff's entire

19 training period.  Sorgen Decl., Ex. 4 (Deposition of Dickens Chun ("Chun Depo.") at 79-80.  Chun

20 also stated that it was not entirely true that once Plaintiff passed training she would most likely not

21 be assigned to cargo duties.  Id. at 79.  As Plaintiff limited her request to assistance during cargo

22 training, it is unclear whether Chun's testimony means that he could have assigned an assistant

23 during the entire training period.  Id. at 79-80.  Chun did not assign a technician to work with

24 Plaintiff because she was never reassigned to cargo training.  Chun Depo. at 80.  Viewing the

25 evidence in the light most favorable to Plaintiff and therefore resolving the ambiguity in her favor,

26 Plaintiff has raised a triable issue of fact as to the reasonableness of Plaintiff's request for assistance

27 during cargo training.

28

United States District Court
For the Northern District of California

#### c.      Reassignment

Reasonable accommodations may include reassignment to a vacant position.  29 C.F.R. §1630.2(n)(2)(ii).  The EEOC has issued an Enforcement Guidance that explains that employers cannot deny reassignment to an employee solely because she is designated as a probationary employee, as long as the employee was adequately performing the essential functions of the position, with or without accommodation, before the need for reassignment arose:

> The longer the period of time in which an employee has adequately performed the essential functions, with or without reasonable accommodation, the more likely it is that reassignment is appropriate if the employee becomes unable to continue performing the essential functions of the current position due to a disability.  If, however, the probationary employee has never adequately performed the essential functions, with or without reasonable accommodation, then s/he is not entitled to reassignment because s/he was never "qualified" for the original position.  In this situation, the employee is similar to an applicant who applies for a job for which s/he is not qualified, and then requests reassignment.  Applicants are not entitled to reassignment.

EEOC Enforcement Guidance, Oct. 17, 2002.  The parties agree that the EEOC's guidelines provide the applicable standard for whether a probationary employee is entitled to reassignment as a reasonable accommodation.  Pl's Mot. at 15; Def's Opp. at 9-10.

Defendant contends that Plaintiff was on probation and she could not perform the essential functions of the job without or without an accommodation, so she was not entitled to a reassignment as an accommodation.  Def's Opp. at 9-10.  Defendant relies on Kennelly v. Pennsylvania Turnpike Comm'n, 208 F.Supp.2d 504 (E.D.Pa. 2002).  There, the plaintiff, a probationary emergency response worker, told his supervisor that he was concerned that he did not have sufficient medical or emergency responder training to perform adequately in the ERW capacity.  Despite reassurances that additional support would be forthcoming, the plaintiff did not receive adequate training to cover all the skills needed to function as an ERW, and the plaintiff developed flu-like symptoms, tremors, and other indicia of intense anxiety to the point where he was unable to work.  The plaintiff requested transfer to a less stressful position, but was eventually terminated.  The employer sought summary judgment on the plaintiff's ADA claim, in part on the ground that the plaintiff was a probationary employee who never adequately performed the essential functions of the job.  Id. at 512.  Citing the EEOC Guidance, the Kennelly court held that the employer was not obligated to

United States District Court
For the Northern District of California

1   reassign the plaintiff because he was not able to function as an ERW and was not "qualified" for the

2   original position. Id. The court denied summary judgment, however, noting that "while it is true

3   that Mr. Kennelly is currently unable to perform work in any capacity with or without reasonable

4   accommodation, Mr. Kennelly suffered his debilitating emotional breakdown when he allegedly was

5   told by his employer that he was going to be assigned ... to work on his own without any further

6   training. . . . Thus, there is a genuine issue of material fact as to whether Mr. Kennelly was ever

7   qualified to perform the duties of the ERW position and, thus, whether he is a qualified individual

8   under the ADA." Id. at 513. The Kennelly court also found a triable issue of fact as to whether he

9   could have performed the essential functions of the job with reasonable accommodation. Id.

10           Here, as in Kennelly, Plaintiff is not entitled to reassignment as an accommodation because

11   she was a probationary employee who did not pass the training requirement and never adequately

12   performed the essential functions. Because there is no triable issue of fact whether Plaintiff was

13   entitled to reassignment to a vacant position, Defendant is entitled to partial summary judgment on

14   this limited issue.

15                    **3.      Collective Bargaining Agreement**

16           Defendant contends that Plaintiff's request for accommodations is unreasonable because

17   giving her a permanent shift in passenger operations would conflict with the seniority system under

18   the collective bargaining agreement between CBP and The National Treasury Employee Union.

19   Def's Opp. at 6-7. Under U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 403 (2002), an

20   accommodation that would conflict with the rules of a seniority system "will ordinarily be

21   unreasonable." Barnett held, however, that the plaintiff may be able to show that the requested

22   accommodation is "reasonable" on the particular facts or special circumstances of her case. Id. at

23   405-06. For example, the plaintiff might show that the employer, "having retained the right to

24   change the seniority system unilaterally, exercises that right fairly frequently, reducing employee

25   expectations that the system will be followed - to the point where one more departure, needed to

26   accommodate an individual with a disability, will not likely make a difference." Id. at 405. To

27   show that her requested accommodation is reasonable despite the presence of a seniority system,

28   Plaintiff contends that under the CBA, only 25% of Defendant's permanent employees will be

rotated based on their bids, such that Plaintiff's fixed placement as an Agriculture Specialist in the Passenger Operations area would not affect such a small pool of rotating employees.  Pl's Reply at 6-7.

Here, Defendant has not shown as a matter of law that the requested accommodation was explicitly prohibited by the terms of the CBA.  See Buckingham, 998 F.2d at 741.  Further, Defendant did not raise this argument in its opening summary judgment brief, raising it in opposition to Plaintiff's motion and in its reply in support of its own motion.  This question whether the accommodations would conflict with the CBA presents a triable issue of fact and Defendant's motion for summary judgment on this ground is denied.

**B.      No Claim for Retaliation**

At deposition, Plaintiff testified that she was not claiming that she was retaliated against because of her disability or for exercising her EEO rights.  Plaintiff's Depo. at 148:18-149:15. Defendant is therefore entitled to summary judgment on the claim for retaliation (Second Cause of Action).

**C.      Pretext**

If Plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to offer legitimate nondiscriminatory reasons for the adverse employment action.  Surrell v. Cal. Water Serv., 518 F.3d 1097, 1106 (9th Cir. 2008).  If the employer presents legitimate reasons, "the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual."  Id.

Here, Defendant offered a legitimate reason for plaintiff's termination: she could not timely complete training and could not perform the essential functions of the CBP Agriculture Specialist position.  Leonard Decl., Ex. 1.

In addition to citing evidence suggesting that she was able to satisfactorily perform the duties of her temporary light duty position, Plaintiff contends that all of the reasons Defendant provided for terminating her related to her disability.  See Leonard Decl., Ex. 1.  Plaintiff argues that Port Director John Leonard cited her disability as the reason for her termination:

> While you have demonstrated that you are able to satisfactorily perform, and possess the knowledge to perform, certain job functions, you have not shown that you can

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    perform essential functions such as physical inspection of cargo, baggage,
     conveyances, etc.  Your physician's limitations on lifting, bending, and twisting
2    prevent you from engaging in certain types of physical exertion expected of
     employees in your position, which may include heavy or moderate lifting, stooping,
3    kneeling, and stretching.  Further, your physician's restrictions preclude you from
     participation in assignment rotation, as well as overtime.

4

5    Id.  For the same reasons that there is a triable issue of fact as to failure to accommodate, there is a

6    triable issue whether Defendant's proffered reasons are merely a pretext for discrimination.

7    **VI.    CONCLUSION**

8         For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED (doc.

9    no. 36) and Defendant's motion for summary judgment is DENIED IN PART AND GRANTED IN

10   PART (doc. no. 40).

11        **IT IS SO ORDERED.**

12

13   Dated: February 8, 2012                        _Elizabeth D. Laporte_
                                                     _____
14                                                   ELIZABETH D. LAPORTE
                                                     United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28